1
2
3
4
5
6               **IN THE UNITED STATES DISTRICT COURT**
7             **FOR THE EASTERN DISTRICT OF CALIFORNIA**
8
9   JUAN AYALA, ET AL.,                    CASE NO. 11-CV-00415-BAM
10              Plaintiffs,        **ORDER ON PARTIES' CROSS MOTIONS**
            vs.                   **FOR SUMMARY JUDGMENT**
11
    UNITED STATES DEPARTMENT OF
12  AGRICULTURE, FARM SERVICE
    AGENCY,
13
                Defendant.
14  _____/
15
16                    **I.   INTRODUCTION**
17        This is an action seeking judicial review of the final decision of the National Appeal Division
18  of the United States Department of Agriculture, Farm Service Agency ("Defendant").  Both parties
19  have consented to the jurisdiction of the magistrate judge.  (Doc. 9, 10.)  The matter is currently
20  before the Court on the parties' cross-motions for summary judgment.  Plaintiffs Juan Ayala, Javier
21  Ayala and Alfredo Ayala (collectively, "Plaintiffs") filed their motion for summary judgment on
22  April 5, 2012.  (Doc. 22.)  Defendant United States Department of Agriculture, Farm Service Agency
23  filed their opposition and cross-motion for summary judgment on May 4, 2012.  (Doc. 23.)  Plaintiffs
24  filed their Reply/Opposition on June 1, 2012.  (Doc. 24.)  Defendant filed its Reply on June 15,
25  2012.  (Doc. 25.)  On July 13, 2012, the court held a hearing and heard oral arguments.  Counsel
26  David Fike appeared in person for Plaintiffs.  Counsel Benjamin Hall appeared in person for
27  Defendant.  (Doc. 27.)  Based on the parties' briefs, argument presented at the July 13, 2012 hearing,
28  and the Court's file, the Court issues the following order.

                                    1

## II.   FACTUAL BACKGROUND

The material facts are not disputed.

### A.   The Parties

Plaintiffs are brothers who, prior to 2002, operated a partnership known as A.J. Farms.[1] (Administrative Record "AR" at 178.)  After 2001, A.J. Farms sold its farm property and concluded its business.  *Id.*

Defendant United States Department of Agriculture, Farm Service Agency, is responsible for the administration of the Commodity Credit Corporation ("CCC") and the 2003 Direct and Administration of Counter-Cyclical Program ("DCP") benefits, which are the subject of this appeal.

Diffenbaugh Farming is a farming entity operated by its owner Les Diffenbaugh and his son Kurtis Diffenbauch (collectively, "Diffenbaugh").  Diffenbaugh leases farm numbers 12191 and 12928 (the "Subject Farms") from the Brenda Mesa Water District.  AR at 178.  Sometime prior to 2003, A.J. Farms leased land from Diffenbaugh and raised several different crops on the land.  AR at 178.

Dan Caruthers ("Caruthers"), a former Farm Service Agency official, operated a private company called Personal Management Ag Services, Inc., which assisted farmers and producers with United States Department of Agriculture programs.  AR at178.

### B.   Background of Counter-Cyclical Program Benefits

The Farm Security and Rural Investment Act, Pub. L. 107-171, 116 Stat. 134 (May 13, 2002), was enacted into law on May 13, 2002.  Title I, codified at 7 U.S.C. § 7901 *et seq.,* authorizes both direct and counter-cyclical payments to producers of qualified commodities.  The bill was enacted in part to provide a financial safety net to protect farmers from fluctuating commodity prices.  *See In Re Wilson,* 305 B.R. 4, 18-19 (N.D. Iowa 2004).  The Direct and Counter-Cyclical Program provided for payments to eligible producers on farms enrolled for the 2002 through 2007 crop years ("DCP

---

[1] The Court notes that, because the underlying administrative decision was directed at A.J. Farms, rather than the individuals comprising the A.J. Farms partnership, A.J. Farms may be the proper party to this action.  However, because Defendant did not argue this point in its briefing, and further agreed to waive any objection to this issue at oral argument, the Court will not discuss whether A.J. Farms is the proper party.

Payments"). 7 C.F.R. § 1412.1.[2]  The DCP program was administered under the general supervision

of the Commodity Credit Corporation and carried out by Defendant and state and county committees.

7. C.F.R. § 1412.102(a), amended Jan. 1, 2008, now 7 C.F.R. § 1412.2.

## C.    Background of Dispute

On May 16, 2003, Caruthers filed with the Office of the County of Kern Program contracts

for Farm 12191 (the "12191 Contract") and Farm 12928 (the "12928 Contract"). AR 83-85, 86-88,

178.  The 12191 Contract listed Plaintiffs as owner/producers.  AR at 84.  The 12191 Contract

designated a 57.3 percent payment share of wheat, a 14.88 percent share of upland cotton, and a 100

percent share of barley for Plaintiffs.  The 12191 Contract also listed Diffenbaugh as an

owner/producer with percentage shares of wheat, upland cotton, corn and sorghum.  The 12191

Contract also listed Berrenda was an owner/producer with a zero percent share of all crops.  AR at

84, 178.  The 12928 Contract listed Plaintiffs as owners/producers.  AR at 87.  The 12928 Contract

designated a 31.78 percent share of wheat and a 100 percent share of safflower for Plaintiffs.  The

12928 Contract also listed Diffenbaugh and Berrenda as owners/producers, but with zero percent

share for all crops.  AR at 87, 178.[3]

Relevant to this appeal, Section 8B of the standard appendix to DCP Contracts states that:

> (A) If CCC determines a producer erroneously represented any fact affecting a
> determination to be made by CCC under this contract, direct and counter-cyclical
> payments shall not be allowed on the farm with respect to the payment shares of that
> producer. If CCC determines that the misrepresentation was intentional or fraudulent,
> or if the producer knowingly adopted any scheme or device which tends to defeat the
> purposes of this contact, the producer shall forfeit all rights to contract payments on
> each farm in which the producer has an interest and shall refund to CCC all contract
> payments received by the producer during the period of the violation, plus interest.
> (B) All producers sharing in the contract payments are jointly and severally liable for
> any refunds determined pursuant to paragraph A of this section and CCC will
> establish claims for the full amount of the refund against each producer in accordance
> with 7 C.F.R. Part 1403. *A signatory to the contract who does not receive any share*

---

[2] The parties cite to different numbering schemes regarding the same code regulations.  Defendant generally cites to the numbering scheme in effect from 2002-2007, whereas Plaintiffs cite to the numbering scheme in effect as of January 1, 2008.  As the substance of the relevant regulations is identical in both numbering schemes, the Court refers to the current numbering scheme for ease of reference.

[3] The Program Contracts listed an additional entity, Ayala Farms Inc., which is owned and operated by Plaintiffs' brother, Piedad Ayala.  Ayala Farms was designated as owning the remaining crop interests.  However, Ayala Farms does not challenge Defendant's decision, and the Court finds it unnecessary to discuss Ayala Farms, Inc.'s involvement in this farming enterprise to resolve the merits of Plaintiffs' appeal.

1    *of the contract payments shall not be liable for the repayment of such refund.*

2    AR at 325. (Emphasis added.)

3         On April 22, 2003, Defendant received an Assignment of Payment form relating to Plaintiffs

4    and Diffenbaugh. AR at 178, 280. The form assigned $150,000 of Plaintiff's DCP payments to

5    Diffenbaugh. AR at 178, 280. As a result of the DCP Contracts and Assignments on record,

6    Diffenbaugh received from Defendant DCP payments of approximately $70,000 of Plaintiffs' share

7    of the DCP payments. AR at 57-8, 75-6, 179. It is undisputed that Plaintiffs did not possess or

8    physically receive any of the DCP Payments.

9         On August 8, 2003, A.J. Farms sent a letter to Defendant stating:

10        This letter is to inform you of unusual circumstances and request your assistance,
          please do not release any future payments from the Direct and Counter-cyclical
11        Payment Program to [Diffenbaugh]. Currently, we have discovered that we signed
          "Assignment(s) of Payment" to [Diffenbaugh]. Upon, further investigation of these
12        signed "Assignment(s) of Payment," we understand that our payments are being
          forward to [Diffenbaugh]. Unfortunately, we trusted in [Diffenbaugh] and Dan
13        Carruthers, Personal Management Ag Services, Inc., to prepare all required forms for
          USDA-FSA, Direct and Counter-cyclical Payment Program or any other farm
14        programs and assistance. At this point we are only aware of "Assignment(s) of
          Payment" for 2003. We do not have any outstanding debts to [Diffenbaugh] and are in
15        the process of having [Diffenbaugh], of releasing the "Assignment of Payment."

16   AR 179-80, AR 323.

17        Defendant subsequently began an inquiry regarding the DCP Contracts. AR at 180. In a

18   letter dated January 10, 2008, the State Farm Service Agency Committee notified Diffenbaugh that

19   Diffenbaugh was ineligible for DCP benefits for 2003 because Diffenbaugh failed to establish their

20   eligibility for the program. AR at 180. The letter further stated that the DCP Contracts were

21   disapproved and that Diffenbaugh was required to refund payments for the 2003 crop year. AR at

22   180. Approximately one week later, Plaintiffs informed Defendant that it believed some of the

23   signatures on the DCP Contracts were not authentic and that Plaintiffs did not farm the land on the

24   Subject Farms. AR at 180.

25        On July 14, 2008, the Farm Service Agency County Committee sent a new adverse decision

26   to Diffenbaugh, stating that based upon the testimony it received, it was determined Diffenbaugh

27   intentionally or fraudulently misrepresented facts regarding the 2003 DCP Contracts. AR at 180.

28   The letter concluded that Diffenbaugh was responsible for repaying the DCP Payments, but that

4

1   Plaintiffs were not jointly and severally liable because they were not a signatory to the contracts. AR
2   at 180.

3       Diffenbaugh requested a reconsideration hearing before the FSA County Committee.  AR at
4   181.  The hearing was held on December 18, 2008.  AR at 181.  On January 23, 2009, the FSA
5   County Committee informed the parties it had vacated its earlier decision that Plaintiffs were not
6   jointly and severally liable to repay the DCP payments, concluding that there was no evidence
7   supporting Plaintiff's contention that it did not sign the DCP contracts and assignment of payment
8   form.  AR at 181.  The FSA County Committee determined that all parties signing the contracts and
9   receiving a share of the Program payments were jointly and severally liable to repay those payments.
10  AR 181.

11      The parties appealed to the National Appeals Division, and a hearing was held on October 20,
12  2009.  AR at 181.  At the hearing, a forensic document examiner testified that it was probable Javier
13  Ayala signed the DCP Contracts on behalf of A.J. Farms.  AR at 181.  On January 11, 2010, the
14  Hearing Officer filed an Appeal Determination finding that Plaintiffs did not knowingly enroll in the
15  DCP Program, and therefore were not jointly and severally liable to repay the DCP payments.  AR at
16  182.

17      Diffenbaugh requested review and the matter was submitted to Deputy Director M. Terry
18  Johnson for a Director Review Determination.  AR at 182.  On July 23, 2010, the Deputy Director
19  issued the Director Review Determination, which upheld the Hearing Officer's determination finding
20  Diffenbaugh jointly and severally liable for refunding the 2003 DCP Payments.  AR at 177-89.
21  However, the Director Review Determination reversed the Hearing Officer's decision as to Plaintiffs,
22  finding that because Plaintiffs were a signatory to the DCP contracts, under 7 C.F.R. § 1412.63,
23  Plaintiffs remained jointly and severally liable.  AR at 186.

24      Plaintiffs filed a request for reconsideration of the Director Review Determination on August
25  9, 2010.  AR at 191-195.  By letter dated August 17, 2010, the Director denied the request for
26  reconsideration, finding Plaintiffs established no material error of fact or law.  AR at 198-99.
27  Plaintiffs then filed this action on March 10, 2011, seeking reversal of the final determination of the
28  National Appeals Division pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.,*

1 | and 7 U.S.C. § 6999.

2 | **III.   STANDARD OF REVIEW**

3 |     The Court reviews agency action challenged under the Administrative Procedures Act based
4 | upon the administrative record. *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44 (1985)
5 | ("The task of the reviewing court is to apply the appropriate APA standard of review [ ] to the
6 | agency decision based on the record the agency presents to the reviewing court.")  As a general
7 | matter, "[j]udicial review of an agency decision is narrow." *Balice v. USDA,* 203 F.3d 684, 689 (9th
8 | Cir. 2000) ("Judicial review of an agency decision is narrow . . . [The court] will not substitute [its]
9 | judgment for that of the agency.")

10 |     Under the Administrative Procedure Act, the Court may set aside an agency decision only
11 | when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."
12 | 5 U.S.C. § 706(2)(A); *Save the Peaks Coalition v. United States Forest Serv.,* 669 F.3d 1025, 1035-
13 | 36 (9th Cir. 2012) (the court will "hold unlawful and set aside agency action, findings, and
14 | conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in
15 | accordance with law.")   The party challenging agency action bears the burden of proof.  *San Luis*
16 | *Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir.1986)
17 | (citing *Nat'l Ass'n of Regulatory Utility Comm'r v. F.C.C.*, 746 F.2d 1492, 1502 (D.C.Cir.1984)).

18 |     "An agency's action is arbitrary and capricious if the agency fails to consider an important
19 | aspect of a problem, if the agency offers an explanation for the decision that is contrary to the
20 | evidence, if the agency's decision is so implausible that it could not be ascribed to a difference in
21 | view or be the product of agency expertise, or if the agency's decision is contrary to governing law."
22 | *The Lands Council v. Powell,* 395 F.3d 1019, 1026 (9th Cir. 2005) (citations omitted).  An agency
23 | action will not be reversed as arbitrary and capricious where the agency is able to demonstrate a
24 | "rational connection between the facts found and the conclusions made."  *Native Ecosystems Council*
25 | *v. U.S. Forest Service,* 418 F.3d 953, 960 (9th Cir. 2005).  The reviewing court may not substitute its
26 | judgment for that of the agency.  *Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 573 (9th
27 | Cir. 1988).

28 |

## IV.   DISCUSSION

Plaintiffs do not dispute the Farm Service Agency disbursed payments under the 2003 DCP Contracts for the Subject Farms, including payments for Plaintiffs' percentage share, which were forwarded to Diffenbaugh pursuant to the assignment on file with the Farm Service Agency.  Rather, Plaintiffs dispute that they are jointly and severally liable under the following theories: (1) Plaintiffs can not be held jointly and severally liable to repay the DCP payments because they did not actually "receive" any payments, as those payments were assigned to Diffenbaugh; (2) Plaintiffs can not be held jointly and severally liable for repayment of the DCP Payments because they did not actually "produce" any crops during the relevant period and, as such, were never entitled to receive any share of the DCP payments because they never attained the status of producer; and (3) Defendant has waived its statutory right to hold Plaintiffs jointly and severally liable based on the language of the DCP Contract.

Each of these arguments are predicated on the apparent conflict between the language of the Regulations which guide the parties' relationship and language in the DCP Contract.  The Regulations provide, in pertinent part, that in the event of a violation of the DCP Contract, "[a]ll signatories to a contract are jointly and severally liable for contract and resulting payments and penalties."  7 C.F.R. § 1412.63.  Section 8B of the DCP Contract Appendix, however, provides as follows: "All producers sharing in the contract payments are jointly and severally liable for any refunds . . . A signatory to the contract *who does not receive* any share of the contract payments shall not be liable for repayment of the refund."  AR at 325  (Emphasis added).

### A.     Plaintiffs' Liability Predicated On "Receipt" of Payments

Plaintiffs do not challenge Defendant's finding that Plaintiffs signed the DCP Contracts.[4] Rather, in their Opening Brief, Plaintiffs' primary argument is that, pursuant to Section 8B of the DCP Contract Appendix, Plaintiffs cannot be held jointly and severally liable for repayment of DCP Payments because Plaintiffs never received any share of these payments.

---

[4] During the Administrative Proceedings, Plaintiffs disputed they signed the DCP contracts.  On this appeal, however, no such arguments are made.

1                  **1.      The Agency's Decision Was Not Arbitrary or Capricious**

2           In interpreting an agency's regulations, the Court will examine the language of the regulation

3   by looking to "provisions of the whole law, and to its object and policy." *Pilot Life Ins. v. Dedeaux,*

4   481 U.S. 41, 51, 107 S. Ct. 1549 (1987).  The Court will take into account common sense, the

5   regulatory purpose, and the practical consequences of the proposed interpretation.  *Crown Pacific v.*

6   *Occupational Saftey & Health Review Comm'n.,* 197 F.3d 1036, 1040 (9th Cir. 1999).

7           The court must give substantial deference to an agency's interpretation of its own regulations.

8   *Akootchook v. United States*, 271 F.3d 1160, 1167 (9th Cir. 2001); *see also Alhambra Hosp. v.*

9   *Thompson*, 259 F.3d 1071 (9th Cir. 2001) (stating that in Ninth Circuit court's review of agency's

10  interpretation of its own regulations is "extremely deferential").  The court's task "is not to decide

11  which among several competing interpretations best serves the regulatory purpose." *Thomas*

12  *Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381 (1994).  The court must defer to the

13  agency's interpretation of its own regulations unless an alternative reading is compelled by the

14  regulation's plain language or by other indications of the agency's intent at the time of the regulation's

15  promulgation. *Id.; Providence Hosp. of Toppenish v. Shalala,* 52 F.3d 213, 216 (9th Cir. 1995).  The

16  "agency's determination must be given controlling weight unless it is plainly erroneous or

17  inconsistent with the regulation." *Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381 (internal

18  quotations and citations omitted).

19          In addressing Plaintiffs' argument concerning receipt of DCP Payments, the Director stated

20  the following:

21          I recognize [Plaintiffs'] claim that because [A.J. Farms] did not actually receive any
            payments from the 2003 DCP contract for farm serial number 12191, it cannot be held
22          jointly and severally liable for any required refund of those payments.  In support of
            this claim, [Plaintiffs] reference the DCP contract Appendix which states, that a
23          signatory to such contracts who does not receive any share of the contract payments
            shall not be liable for repayment of such refund. . . . However, as I have already
24          pointed out, the regulations applicable to the 2003 DCP state that all signatories to a
            DCP contract are jointly and severally liable for contract violations and resulting
25  repayments and penalties. 7 C.F.R. § 1412.603.  Thus, regardless, of whether a producer actually
    receives any payments under a contract or is entitled to a payment share, the regulations expressly
26  state that if a producer is a signatory to a DCP contract, and a contract violations results in a demand
    for repayment, FSA has the regulatory authority to hold the producer jointly and severally liable for
27  the required repayment.

28  AR at 185-6.

                                                    8

1    Plaintiffs argue that because Section 8B of the DCP Contract Appendix - providing that joint

2   and several liability is predicated on receipt of DCP Payments - governs the parties' relationship, and

3   not 7 C.F.R. § 1412.63, the Director's decision was clear error.

4    The Director's determination that the Regulations, rather than Plaintiff's literal reading of

5   Section 8B of the DCP Contract Appendix, governed the parties' relationship, was a reasonable

6   interpretation the Court will not disturb.  *See Pauly v. U.S. Dept. Of Agri.,* 348 F.3d 1143, 1149 (9th

7   Cir. 2003) (finding that ambiguity in a Shared Appreciation Agreement was "resolved by the statute

8   authorizing the agreement.") The Director resolved any potential conflict between the language of

9   the Regulation and the terms of the DCP Contact Appendix 8B.  The Director determined the

10   Regulation controlled the transaction and the parties' relationship.  The Director's resolution of

11   potentially conflicting terms, in light of the facts of this case, is not arbitrary and capricious.

12    Further, as Defendant correctly points out, reading a requirement that a party physically must

13   receive the DCP Payments into the meaning of Section 8B of the DCP Contracts would permit DCP

14   program participants to absolve themselves of liability altogether.  A party signatory could simply

15   assign, as Plaintiffs did here, the rights to DCP Payments to a non-signatory, and neither party would

16   fall within the purview of the DCP Contract for recovery purposes.

17    Taking into consideration the regulatory purpose of the DCP and the practical consequences

18   of Plaintiff's proposed interpretation, the Director's decision was not arbitrary, capricious or contrary

19   to the law.  Failing this highly deferential standard, the Court will not "decide which among several

20   competing interpretations best serves the regulatory purpose." *Thomas Jefferson Univ. v. Shalala*,

21   512 U.S. 504, 512, 114 S.Ct. 2381 (1994).  Rather, the Court must afford "controlling weight" to the

22   agency's determination because it was not "plainly erroneous or inconsistent with the regulation."

23   *Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381.

24    **2.    Plaintiffs Are Jointly and Severally Liable Under the Terms of the DCP**

25    **Contract**

26    Even if the Director should have found that Section 8B of the DCP Contract Appendix

27   governed the parties' relationship (rather than 7 C.F.R. § 1412.63), Plaintiffs would remain jointly

28   and severally liable under the terms of the DCP Contract.

9

1   Producers are entitled to assign their right to DCP Payments under DCP Regulations.

2   7 C.F.R. § 1416.9(b) ("Any producer entitled to any payment may assign any payments in

3   accordance with regulations governing the assignment of payments found at part 1404 of this

4   chapter.")  Section 1404.3 provides that for contracts and agreements entered into by Farm Service

5   Agency, "any payment due a person from FSA or CCC may be assigned."  The Regulations define

6   "Assignee" as "any person, including any agency of the Federal Government, to whom an

7   assignment of an FSA or CCC payment is made in accordance with this part."  7 C.F.R.

8   1404.2(a)(1).  An "Assignor" is defined as "any person who is the recipient of a payment from FSA

9   or CCC who assigns the payment to another person in accordance with this part."  7 C.F.R.

10  1404.2(a)(2).

11  Plaintiffs "received" the DCP Payments within the meaning of Section 8B of the DCP

12  Contract Appendix.  Under the specific definitions articulated by the DCP Regulations, an "assignor"

13  is defined as "any person who is the *recipient* of a payment from FSA or CCC who assigns the

14  payment to another person in accordance with this part."  *See* 7 C.F.R. 1404.2(a)(2).  The

15  Regulations contemplated that a beneficiary of  DCP Payments, who is entitled to any payment, may

16  assign the right to those payments, and are nonetheless the "recipient" of those payments.

17  Under the DCP Contracts, Plaintiffs were entitled to receive a share of Program payments.[5]

18  Based on the assignment documents on file with Defendant, those payments were properly directed

19  to Diffenabugh.  While those payments physically were not received by Plaintiffs, they were

20  disbursed for Plaintiffs' benefit as the owner/producer signatory listed under the DCP Contracts.

21  Plaintiffs cite no authority, and the Court has found none, standing for the proposition that lack of

22  physical receipt of DCP Payments, where an apparently valid assignment is on file, precludes a

23  finding that Plaintiffs did not constructively "receive" the DCP payments within the intended

24  meaning of the DCP Contracts.  Notably, Plaintiffs concede that this argument lacks merit in its

25  Reply Brief.  *See,* Pls.' Reply Br., 3: 25-28, 4: 1-4, Doc. 24 (Contrary to defendant's argument,

26  plaintiffs do not ask for this court to construe the term "receive" in Section 8B of the CCC-509

27

28  [5] Plaintiffs, in their Reply Brief, dispute that they were ever entitled to receive a share of the DCP Payments.  The Court addresses this argument in greater detail below.

Appendix to exclude any party who has assigned its payment.  Plaintiffs do not contend that an eligible producer who is entitled to receive a share of contract payments and then assigns them to a third party is longer [sic] liable for repayment.")  Accordingly, the Director's decision was not arbitrary, capricious or contrary to the law because Plaintiffs were signatories to the DCP Contracts who were entitled to receive payments.

**B.      Plaintiffs' Liability As a Non-Producer**

Plaintiffs argue that, because they are not "producers" under the DCP Regulations, they can not be held jointly and severally liable under the DCP Contract.  Section 2A of the CCC-509 Appendix to the DCP includes the following definition of the term "Producer": "Producer means an owner, operator, landlord, tenant, or sharecropper who shares in the risk of producing a crop and is entitled to share in crop available for marketing from the farm, or would have shared had the crop been produced."  Based on this definition, Plaintiff argues they are not a "producer," because they did not farm the Subject Farms in 2003.

Plaintiffs further argue that "only a producer entitled to any payment may assign such payment to a third party."  Pls.' Reply Br., 2: 17-18, Doc. 24 (emphasis in original), citing 7 C.F.R. 605(b).  Plaintiff summarizes this argument as follows:

> [I]t is undisputed that plaintiffs did not qualify as producers under the DCP contracts, and therefore, they were not entitled to receive payments under the contracts.
>
> Instead, the reference to plaintiffs as co-producers under the contracts was part of the artifice created by Diffenbaugh which the Director determined constituted misrepresentation as to the nature of the contract. The Director found that in order to obtain the contract payments, Diffenbaugh had intentionally misrepresented that plaintiffs were co-producers on the two farms. (UF No. 20) In fact, plaintiffs had not farmed in 2003 and therefore were not entitled to participate in the program as producers. (UF No. 23) Thus, by definition, plaintiffs were not producers and not entitled to receive the contract payments. Accordingly, they cannot be deemed to be recipients of the payments and therefore, under the regulations, they were unable to assign payments they did not receive.

(Pls.' Reply, 2-3, Doc. 24.)  In simpler terms, Plaintiffs argue they are not producers because they did not *in fact* farm the Subject Farms, despite signing DCP Contracts representing they were engaged in such farming activity.

**1.      Plaintiffs Waived Their Non-Producer Argument**

11

1    Plaintiffs have raised this argument - that because Plaintiffs did not *in fact* farm the Subject

2    Farms, they were "not producers" subject to liability under the Regulations - for the first time in their

3    Reply Brief.  This argument is waived.  As a general rule, issues raised for the first time in a reply

4    brief are waived.  *See Singh v. Ashcroft*, 361 F.3d 1152, 1157 n. 3 (9th Cir. 2004) (issues not raised

5    in opening brief are typically deemed waived); *Jones v. Astrue,* 2010 WL 5111457 (E.D. Cal. 2010)

6    (arguments raised for the first time in a reply brief are waived); *Zango, Inc. v. Kaspersky Lab, Inc*.,

7    568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are

8    waived.") (citing *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir.1990))

9    Plaintiffs' Reply Brief states this argument was made in their Opening Brief.   (Pls.' Reply

10   Br., 3-4, Doc. 24.) ("Plaintiffs do not contend that an eligible producer who is entitled to receive a

11   share of contract payments and then assigns them to a third party is longer [sic] liable for repayment.

12   Rather, plaintiffs seek an interpretation which is consistent with a party's status as a signatory only

13   and is not a producer eligible for contract payments.  In such a case, the exclusion of liability applies

14   when a party who is only a signatory and not a producer, does not actually receive a contract

15   payment.")[6]

16    The Court disagrees with Plaintiffs' categorization of their arguments.  Plaintiffs' Opening

17   Brief does not argue their status as producers is a necessary predicate to joint and several liability.

18   Plaintiffs state they did not farm the Subject Farms, but only as anecdotal evidence supporting their

19   non-receipt of DCP Payments argument.  *See,* Pls.' Opening Br., 8: 8-13 ("[T]he Director apparently

20   deemed it unnecessary to make a determination as to whether plaintiffs actually received any

21   payments under the contracts, although this could certainly be inferred from his finding that AJF did

22   not lease or farm the properties"); 9: 1-4 ("Therefore, given the fact that plaintiffs did not lease or

23   farm either of the properties under DCP contracts 12191 or 12928 in 2003, and that the record

24   reflects that payments for such farms were disbursed to Diffenbaugh Farming, the Court should find

25   that as a matter of law, plaintiffs did not receive any contract payments under the 2003 DCP

26

27    [6] The Court notes this argument does not overcome the Director's finding that the Regulations, rather than Section 8B of the DCP Contract Appendix, governs the parties' relationship.  The Regulations provide that "[a]ll signatories to a contract are jointly and severally liable for contract and resulting payments and penalties."  7 C.F.R. § 1412.63.  The

28   Regulations make no reference to signatory *producers.*

contracts.")

Contrary to Plaintiffs' representations in its Reply Brief, the primary focus of Plaintiffs' Opening Brief centers on Plaintiff's non-receipt of DCP Payments. *See,* Pls.' Opening Br., 1: 8-14 ("Despite a provision in the DCP contract which states that "a signatory to the contract who does not receive any share of the contract payments shall not be liable for the repayment of such refund" and undisputed evidence presented below that the plaintiffs did not receive any share of the subject contract payments, the Director concluded that plaintiffs were jointly and severally liable for repayment of the refund amount solely because they were signatories to the contract"); 7: 18-22 ("The Director Review Determination finding that AJF was liable for repayment of contract payments solely as a result of having signed the contracts was erroneous as a matter of law by failing to give effect to the express language of Section 8 B of the Appendix to the contract which states that a signatory who does not receive any share of the contract payments shall not be liable for repayment"); 7: 23-25 ("As explained below, since plaintiffs received no share of the subject contract payments, under accepted rules of contract interpretation, the Director should have ruled that plaintiffs were not liable for repayment thereof"); 8: 3-4 ("There was no evidence presented that plaintiffs received any share of the contract payments made under the 2003 DCP contracts"); 8: 22-25 ("The evidence in the record identifying the recipient of payments made under the 2003 DCP contracts clearly supports a finding that plaintiffs did not receive any payment under the 2003 contracts"); 9: 22-24 ([emphasizing the language of Seciton 8B] "A signatory to the contract who does not receive any share of the contract payments shall not be liable for the repayment of such refund"); 12: 9-13 (In concluding that Plaintiff could not be liable because they never received any DCP Payments, Plaintiff states that "a reasonable interpretation of the various regulations and the contract language is that all signatories actually receiving payments are jointly and severally liable for repayment, but a signatory who receives no payment is not liable for repayment"). Accordingly, Plaintiffs have waived their argument that they are not "producers" within the meaning of Section 8B of the DCP Contracts.

1

     **2.**       **Plaintiffs Held Themselves Out As Producers, Which Creates Joint and Several**

2

                 **Liability Under the DCP Contracts**

3         Even assuming Plaintiffs had not waived this argument, Plaintiff remain liable for the DCP

4  Payments.  While Plaintiffs did not farm the Subject Farms, Plaintiffs held themselves out as though

5  they did.[7]  By signing the DCP Contracts, Plaintiffs represented to Defendant they were farming the

6  Subject Farms.  As the Deputy Director correctly observed:

7

        Even if [Juan Ayala] did not prepare the DCP contract himself, he was responsible to
        read and understand the contract before he signed it on behalf of [A.J. Farms].  The

8

        contract contained numerous references to the DCP program.  The contract also listed
        the farm numbers, the program year, the crop shares, the names of the

9

        owners/producers, and the name of A.J. Farms. [citaiton omitted.] There was no
        reason for [Juan Ayala] to be confused regarding the purpose of the contract.  If [Juan

10

        Ayala] had questions about the contract or needed to have the contract translated, then
        [Juan Ayala] had a responsibility to resolve these issues prior to signing.

11

12  (AR at 185).  Therefore, Plaintiffs represented to Defendant that they were the producers described in

13  the DCP Contracts.

14         Furthermore, Plaintiffs' claims that they were unaware Diffenbaugh represented they were

15  farming the Subject Farms on their behalf is belied by Plaintiffs' August 8, 2003 letter to the Farm

16  Service Agency.  The August 8, 2003 letter does not claim Plaintiffs were unaware they enrolled in

17  the DCP program.  On the contrary, Plaintiffs claim entitlement to DCP payments, but apparently

18  were unaware DCP payments were being diverted to Diffenbaugh due to the Assignment.  *See* AR at

19  323 ("please do not release any future payments from the Direct and Counter-cyclical Payment

20  Program to [Diffenbaugh]. Currently, we have discovered that we signed "Assignment(s) of

21  Payment" to [Diffenbaugh]. Upon, further investigation of these signed "Assignment(s) of Payment,"

22  we understand that *our payments* are being forward [sic] to [Diffenbaugh]. Unfortunately, *we trusted*

23  *in [Diffenbaugh] and Dan Carruthers, Personal Management Ag Services, Inc., to prepare all*

24  *required forms for USDA-FSA, Direct and Counter-cyclical Payment Program or any other farm*

25  *programs and assistance*." (Emphasis added.)

26

27

       [7] At oral argument, Plaintiffs argued the Court should look behind the Contracts.  Plaintiffs argued Diffenbaugh
misrepresented the farming circumstances of the Subject Farms as well as Plaintiffs' farming status to Defendant. The
Director, however, looked behind the Contract as to the circumstances surrounding the production.  That resolution is not

28  arbitrary and capricious.

1    By virtue of the DCP Contract and the August 8, 2003 letter, Plaintiffs implicitly represented

2  they were entitled to DCP Payments.  As Defendant's counsel noted at oral argument, Defendant

3  relies on the representations made in DCP documents for disbursing DCP Payments.  Nothing in the

4  Regulations imposes obligations on Defendant to inspect whether the representations contained in

5  DCP Contracts are accurate.  Ultimately, Plaintiffs are responsible for the representations made by

6  their signed agreement.  Plaintiffs can not avoid their representation to Defendant that they were

7  farming the Subject Farms by claiming to be unaware the contracts they signed made such

8  representations.  Accordingly, Defendant's determination was not arbitrary, capricious or contrary to

9  the law.

10                              **IV.    CONCLUSION**

11    For the foregoing reasons, the Court DENIES Plaintiffs Juan Ayala, Javier Ayala and Alfredo

12  Ayala's Motion for Summary Judgment, and GRANTS Defendant United States Department of

13  Agriculture, Farm Service Agency's Motion for Summary Judgment in its entirety.  The clerk of the

14  Court is directed to enter judgment in favor of the United States Department of Agriculture, Farm

15  Service Agency, and against Plaintiffs Juan Ayala, Javier Ayala and Alfredo Ayala.  The clerk is

16  directed to close this case.

17    IT IS SO ORDERED.

18  **Dated:    July 17, 2012**              **/s/ Barbara A. McAuliffe**
                                             UNITED STATES MAGISTRATE JUDGE

15